UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEO KEARNS JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 06-2896** |
| **ORLEANS PARISH CORRECTIONAL FACILITY SHERIFF GUSMAN** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

## ORDER AND REASONS

This matter is before the undersigned United States Magistrate Judge upon consent of the parties pursuant to Title 28 U.S.C. § 636(c). The defendant, Orleans Parish Criminal Sheriff Marlin Gusman, filed a Motion for Judgment on the Pleadings (Rec. Doc. No. 26) seeking dismissal of the plaintiff's claims for failure to state a claim for which relief can be granted. The plaintiff, Leo Kearns Jr., pro se, has filed a memorandum in opposition (Rec. Doc. No. 27). Upon review of the entire record, the Court has determined that this matter can be disposed of without an Evidentiary Hearing.

### I. Factual and Procedural Summary

#### A. The Complaint

The plaintiff, Leo Kearns Jr. ("Kearns"), is an inmate presently incarcerated in the Elayn Hunt Correctional Center ("Hunt") in St. Gabriel, Louisiana. Kearns filed this *pro se* and *in forma pauperis* complaint pursuant to Title 42 U.S.C. § 1983 against Orleans Parish Criminal Sheriff

Marlin Gusman seeking monetary damages for the conditions of his confinement in the Orleans Parish Prison system ("OPP") during Hurricane Katrina.

Kearns alleges that in August of 2005, he was incarcerated in OPP when Hurricane Katrina struck the City of New Orleans. He alleges that, as a result of the storm, water poured through the ceiling and began to rise inside of the jail. He also alleges that the deputies had abandoned their posts leaving him to die in the contaminated water. He claims that he survived for three days without food or water. He also states that there was a lack of ventilation in the jail due to a power outage.

Kearns further alleges that the inmates could not use the toilets and showers. He claims that the toilets were filled with urine and stool which caused foul odors. Kearns further states that the flooding in the jail destroyed important legal work vital to him proving his innocence. Finally, he claims that he is diabetic and had to go three days without medication, which caused him to fear for his life. He seeks $1 million for having endured these conditions during Hurricane Katrina.

In his separately filed Memorandum on Jurisdiction and Venue (Rec. Doc. No. 12), Kearns also alleges that he broke his left pinky finger, which healed without medical treatment. He also suggests that Gusman was aware of the call for a mandatory evacuation of the city and did nothing until after the storm.

### B. Pending Motion

Sheriff Gusman filed a Motion for Judgment on the Pleadings Pursuant to Rule 12(c) (Rec. Doc. No. 26). Sheriff Gusman argues that the plaintiff has failed to allege any personal involvement or intentional indifference with regard to the conditions of the prison during Hurricane Katrina or in the evacuation process itself.

In his opposition memorandum (Rec. Doc. No. 27), Kearns alleges that Sheriff Gusman, knowing that a mandatory evacuation was ordered, made no preparations for the inmates housed in OPP. Kearns alleges that Gusman failed to exercise the powers that come from his position of authority at the jail. He further suggests that the conditions of the jail during Hurricane Katrina amounted to cruel and unusual punishment. He reiterates that he lived in fear because he was without medication and that he slipped in the water and broke his finger. Kearns argues that Gusman had the authority to ensure the safety of all inmates in OPP and failed to take action to protect them from the storm.

## II.  Standards of Review of a Motion for Judgement on the Pleadings Pursuant to Fed. R. Civ. P. 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The standard for addressing a Rule 12(c) motion is the same as that used for deciding motions to dismiss pursuant to Rule 12(b)(6). *Great Plains Trust Co. v. Morgan Stanley Dean Witter*, 313 F.3d 305, 313 n.8 (5th Cir. 2002) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1368 at 591).

Thus, a motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts. *Great Plains Trust Co.*, 313 F.3d at 313 (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir.1990)). The query for the Court is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir.2001) (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir.2000)).

The Court can dismiss a claim under Fed. R. Civ. P. 12(c) when it is clear that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir.1999) (citing *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir.1990)). In considering the motion, the pleadings should be construed liberally and judgment on the pleadings granted only if there are no disputed issues of fact and only questions of law remain. *Hughes*, 278 F.3d at 420 (citing *Voest-Alpine Trading USA Corp. v. Bank of China*, 142 F.3d 887, 891 (5th Cir.1998)). "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Id*. (citing *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir.1996)).

The Court will not, however, accept as true conclusory allegations or unwarranted deductions of fact. *Great Plains Trust Co.*, 313 F.3d at 312-13 (citing *Collins*, 224 F.3d at 498). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones*, 188 F.3d at 324 (citations omitted).

### III.   **Analysis**

Kearns complains that Sheriff Gusman should be held liable, as sheriff and administrator of the jail, for the failure to evacuate the prison before the storm and for the conditions of his confinement, i.e., no electricity, food, water, or ventilation, caused by the storm and the rising water. He also complains that he was without medication for his diabetes for three days, which caused him to fear for his life. He further claims that, at some point, he slipped in the water and broke his left pinky finger, which healed without medical care. He claims that these conditions, and the timing

of the evacuation, amounted to cruel and unusual punishment and constituted negligence, which caused him to be fearful.

The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Proof of an individual defendant's personal involvement in the alleged wrong is, of course, a prerequisite to his liability on the claim for damages under § 1983. However, a supervisory official, like Sheriff Gusman, cannot be held liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). Moreover, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). An official is deliberately indifferent to an inmate's safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to

abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The same standard is true with regard to medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

In this case, the plaintiff does not allege that Sheriff Gusman personally created the conditions of his confinement. He alleges instead that Sheriff Gusman, as a person of authority, knew of the impending dangers from the storm, in light of the city-wide evacuation order, and he either chose not to exercise his authority to protect the plaintiff and other inmates or chose to leave the inmates in harms way. Kearns claims, under a broad reading, that this administrative decision resulted in a violation of his constitutional rights.

Supervisory liability may exist "without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir.1987). An official policy is:

1. a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the [government entity] . . . or by an official to whom the [entity] ha[s] delegated policy-making authority; or

2. A persistent, widespread practice of . . . officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents [the entity's] policy.

*Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir.1992). A plaintiff may also establish a custom or policy based on an isolated decision made in the context of a particular situation if the decision was made by an authorized policymaker in whom final authority rested regarding the action ordered. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124-25 (1988); *Bennett v. Pippin*, 74 F.3d 578, 586 (5th Cir. 1996).

In this case, as mentioned above, Kearns has alleged that Sheriff Gusman knew of the dangers posed by Hurricane Katrina and was aware that the danger prompted the evacuation of the city. Kearns further alleges that, in spite of this knowledge, Sheriff Gusman failed to issue or chose not to issue a directive for the prison to be evacuated for the safety of the inmates. He argues that Sheriff Gusman was the person with the authority to ensure the safety of the inmates and rather than make arrangements for their protection, his decision was to leave them in the aged prison facility to fend for themselves. This is sufficient to at least state a basis for policy-maker liability so as to overcome dismissal at the pleading stage.

Therefore, a review of Kearns's allegations, and opposition to the defendant's motion, present more than conclusory allegations which are, at this stage, sufficient to overcome the defendants' Rule 12(c) motion. *Great Plains Trust Co.*, 313 F.3d at 312-13. Kearns has made an initial showing of some basis for liability against Sheriff Gusman in disregard to his personal safety.

For the foregoing reasons, **IT IS ORDERED** that Sheriff Gusman's **Motion for Judgment on the Pleadings (Rec. Doc. No. 26)** is **DENIED**.

**IT IS FURTHER ORDERED** that this case will proceed to non-jury trial before the undersigned Magistrate Judge as scheduled for 9:00 a.m. on May 20, 2008, with the plaintiff participating by telephone and counsel for the defendant and his witnesses appearing in person in Chambers for trial.

New Orleans, Louisiana, this 12th day of May, 2008.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**